2016 PA Super 168

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT N. SITLER | |
| Appellee | No. 3051 EDA 2013 |

Appeal from the Order November 1, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000389-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., MUNDY, J., OLSON, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                    **FILED JULY 26, 2016**

The Commonwealth brings this interlocutory appeal pursuant to Pa.R.A.P. 311(d) from the order entered on the record on November 1, 2013, in the Court of Common Pleas of Montgomery County, granting Robert N. Sitler's pre-trial motions *in limine*.[1] Sitler was charged with multiple vehicular and criminal offenses following a traffic accident that he caused on November 12, 2012. The trial court's order precluded the Commonwealth from introducing, *inter alia*, evidence of Sitler's prior vehicular criminal

---

[1] **See** Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

conviction, evidence of Sitler's consumption of alcohol before the accident, and evidence pertaining to Sitler's *crimen falsi* offenses should he plead guilty to those charges. We affirm in part, reverse in part, and vacate in part, and remand for trial.

Because this case has not yet been tried, and because the case has not yet been presented to the fact-finder, we derive the following summary of the facts underlying Sitler's charges from the certified record and from Sitler's preliminary hearing.

On November 12, 2012, Regina Qawasmy was returning to her home from work at approximately 9:00 p.m. on High Street in Lower Pottsgrove Township, Montgomery County, Pennsylvania. While traveling on High Street, Ms. Qawasmy noticed a pick-up truck driving very closely to her rear bumper. Ms. Qawasmy repeatedly applied her brakes in an effort to get the truck to back away from her vehicle, to no avail. Soon thereafter, Ms. Qawasmy activated her turn signal to inform the pick-up truck that she was going to turn right onto Sunnyside Road. The driver of the truck immediately revved the engine, and accelerated to the left around Ms. Qawasmy's turning vehicle.

When the truck sped around Ms. Qawasmy, it struck and killed a sixteen-year-old boy who was standing in the center lane of the roadway. After the collision, both Ms. Qawasmy and the pick-up truck driver pulled over to the side of the road and parked the vehicles.

Officer Matthew Meitzler of the Lower Pottsgrove Police Department was dispatched to the scene of the accident. When Officer Meitzler arrived at the scene, he located the victim lying against a curb, bleeding from the nose, mouth and ear. Officer Meitzler detected a faint pulse initially. He and an EMT who had arrived on the scene began to perform CPR on the victim until an ambulance arrived and transported the victim to the hospital. The victim died that night at the hospital.

While Officer Meitzler was attending to the victim, Sitler's girlfriend, Denise Dinnocenti, stated she was the driver of the pick-up truck. Officer Meitzler was directed to escort Ms. Dinnocenti to a local hospital to have her blood drawn to ascertain whether she was operating the truck under the influence of alcohol. Officer Meitzler did not take Sitler or anyone else to the hospital for a blood draw.

Officer Meitzler took two written statements from Sitler, one on the night of the accident (November 12, 2012), and one on November 17, 2012. In his initial statement, Sitler said that Ms. Dinnocenti was driving the vehicle at the time of the accident, and that he was positioned in the front passenger seat at all relevant times. Sitler informed the police that, while he and Ms. Dinnocenti were travelling behind the van, Ms. Qawasmy abruptly activated her turn signal and quickly began to make the turn. This swift action forced Ms. Dinnocenti immediately to veer into the center lane to

avoid hitting Ms. Qawasmy's van, thereby striking the victim crossing the road.

Ms. Dinnocenti had provided the police a written statement on the night in question that conformed to the version of events provided by Sitler in his first statement. However, upon reviewing the Sitler and Dinnocenti statements a few days after the accident, Officer Meitzler began to notice some material inconsistencies. He decided to re-interview both individuals. In her second interview, Ms. Dinnocenti revealed that she was not the driver of the pick-up truck. Ms. Dinnocenti told Officer Meitzler that Sitler was the driver, and that she had admitted to being the driver due to Sitler's criminal history and her fear that he would face severe consequences if he was arrested. She also told Officer Meitzler that Sitler had consumed a few alcoholic beverages prior to driving the truck.

When Officer Meitzler re-interviewed Sitler, Sitler conceded that he was driving the pick-up truck on the date in question. Sitler acknowledged that he had been convicted of vehicular manslaughter in Alabama in 2006. Sitler had served a significant sentence for that crime, and he feared that, if he was charged and convicted of a crime for the instant accident, he would be severely punished. Therefore, he instructed Ms. Dinnocenti and her children (who also were in the car at the time of the accident) to lie to the authorities about who was driving the vehicle. Sitler also admitted to drinking three beers before driving the pick-up truck.

Detective David Schanes, an agent of the Montgomery County District Attorney's Office, testified as an expert in the field of accident reconstruction. Detective Schanes was called to the scene of the accident on November 12, 2012, and spoke with Sitler. During the conversation, Detective Schanes noticed that Sitler's body emitted an odor of alcoholic beverages. Sitler admitted to Detective Schanes that he had consumed a few alcoholic drinks, but adamantly denied that Ms. Dinnocenti had been drinking.

Detective Schanes then investigated the accident. After doing so, he opined that the victim's body came to rest 182 feet from the impact location. Based upon that information, Detective Schanes determined that the pick-up truck was travelling at least 50 miles per hour at the time of impact, which is 15 miles per hour more than the posted speed limit of 35 miles per hour on High Street. With the assistance of a mechanic, Detective Schanes also determined that there were no mechanical problems with the pick-up truck that could have contributed to the accident. Detective Schanes concluded that the tailgating and the speed of the pick-up truck coincided to cause the accident. Finally, Detective Schanes determined that Sitler owned and insured the pick-up truck that struck and killed the victim.

Detective Schanes also spoke with an agent of the company that insured Sitler's truck. The insurance agent indicated to Detective Schanes that Sitler had reported the accident, and that he informed the agent that

Ms. Dinnocenti was driving the pick-up truck at the time of the accident. As noted, this assertion was untrue.

Sitler was arrested, and, on December 10, 2012, was charged by criminal complaint with homicide by vehicle,[2] and a host of other violations of the Motor Vehicle Code.[3] In addition, Sitler was charged under the Crimes Code with numerous offenses, stemming from the lies he told about who was driving the pick-up truck. Specifically, Sitler was charged with insurance fraud, false reports, unsworn falsifications, tampering with/fabricating physical evidence, obstructing the administration of law, corruption of minors, and criminal conspiracy.[4] Sitler filed a pre-trial motion seeking to sever the crimes arising from the Crimes Code, which were acts of *crimen falsi*, from the trial on the homicide by vehicle and Motor Vehicle Violations. The trial court denied the motion.

On October 11, 2013, Sitler filed pre-trial motions *in limine* to preclude, *inter alia*, evidence related to his previous vehicular manslaughter conviction in Alabama in 2006, and evidence related to his consumption of

---

[2] 75 Pa.C.S. § 3732(a).

[3] Sitler was also charged with following too closely, driving at an unsafe speed, driving over the speed limit, disregard for traffic lanes, passing improperly, careless driving, and reckless driving. **See** 75 Pa.C.S. §§ 3310(a), 3361, 3362(a)(1), 3309(1), 3303(a)(1), 3714(a) & (b), and 3736(a), respectively.

[4] **See** 18 Pa.C.S. §§ 4117(a)(2), 4906(b)(1), 4904(a)(1), 4910(1), 5101, 6301(a)(1)(i), and 903(c), respectively.

alcohol prior to the collision. A hearing on the motions *in limine* was held on October 31, 2013, and November 1, 2013. On November 1, 2013, the trial court granted the motions, thereby precluding the Commonwealth from introducing testimony or evidence related to Sitler's prior conviction and his consumption of alcohol.

In addition, on November 1, 2013, before the trial court, Sitler indicated that he wanted to plead guilty to the *crimen falsi* charges stemming from his false statements, and then proceed to trial on the homicide by vehicle and related Motor Vehicle violations. In connection with this representation, he sought a ruling to preclude the Commonwealth from introducing evidence of his *crimen falsi* convictions at trial. The court determined that Sitler could plead guilty separately to the Crimes Code violations without any of the evidence related to those crimes being admitted at his trial for homicide by vehicle. This appeal by the Commonwealth followed.[5]

A divided panel of this Court affirmed the trial court's preclusion of evidence of Sitler's prior conviction and consumption of alcohol, and vacated the portion of the trial court's order precluding evidence of Sitler's false

---

[5] Following the notice of appeal, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 27, 2013, the Commonwealth timely filed a concise statement. On April 30, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

statements, finding the trial court addressed the issue prematurely. Thereafter, the Commonwealth sought *en banc* review, which this Court granted. The matter is now ready for our review.

The Commonwealth frames three issues for this Court's consideration, as follows:

> I.     Whether the trial court abused its discretion when it precluded the Commonwealth from introducing evidence of [Sitler's] prior vehicular manslaughter conviction, where the conviction contained commonalities amply sufficient to demonstrate the required close factual nexus to demonstrate the connective relevance of the prior conviction to the current crime, and was admissible to prove [Sitler's] knowledge that his conduct could result in the death of another person for purposes of establishing the recklessness element of homicide by vehicle, and to establish his motive to lie in connection with his *crimen falsi* and conspiracy offenses?
>
> II.    Whether the trial court abused its discretion when it excluded all evidence of [Sitler's] alcohol consumption prior to the fatal collision without taking into consideration all the circumstances surrounding [Sitler's] drinking, such as, *inter alia*, his erratic driving, where the evidence was admissible to establish the recklessness element of homicide by vehicle, and to establish [Sitler's] motive to lie in connection with his *crimen falsi* and conspiracy offenses?
>
> III.   Whether the trial court abused its discretion in excluding all evidence of [Sitler's] *crimen falsi* charges stemming from the lies he told immediately following the fatal collision, where the unequivocal precedent in the Commonwealth establishes that this evidence is admissible as substantive evidence of consciousness of guilt?

Substituted Brief for the Commonwealth at 4–5.

The Commonwealth first challenges the trial court's ruling that Sitler's 2006 Alabama vehicular manslaughter conviction was inadmissible at Sitler's upcoming trial.[6] The Commonwealth argues Sitler's conviction is admissible as a prior bad act pursuant to Pennsylvania Rule of Evidence 404(b) to prove, *inter alia*, Sitler's knowledge that his conduct could result in the death of another person for purposes of proving the recklessness element of homicide by vehicle.[7] We agree with the Commonwealth.

---

[6] The trial court set forth the following facts related to Sitler's prior conviction:

> In 2006, an Alabama grand jury indicted [Sitler], *inter alia*, of "Recklessly Causing the Death of Another Person While Operating a Motor Vehicle." This charge is akin to Pennsylvania's Homicide by Motor Vehicle. In the Alabama matter, [Sitler] was driving at 6 o'clock in the morning when he encountered a thick, dense fog bank. The driver in front of [Sitler] slammed on the brakes, and when [Sitler] swerved to avoid the same, he entered the opposing lane of traffic thereby killing the woman in the opposing vehicle. The Alabama case proceeded to trial, but resulted in a deadlocked jury. Accordingly, a mistrial was declared. Four (4) months later, [Sitler] plead[ed] guilty to homicide by vehicle in exchange for house arrest.

Trial Court Opinion, 4/30/2014, at 8–9 (record citation omitted).

[7] Pennsylvania Rule of Evidence 404(b) states, in pertinent part:

> **(b) Crimes, Wrongs or Other Acts**.
>
> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(Footnote Continued Next Page)*

Our standard of review is well-settled. "Questions concerning the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Russell*, 938 A.2d 1082, 1091 (Pa. Super. 2007), *citing Commonwealth v. Whitaker*, 878 A.2d 914, 923 (Pa. Super. 2005). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted). "[I]f in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted).

---

*(Footnote Continued)* ————————

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, **knowledge**, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2) (emphasis added).

- 10 -

In **Commonwealth v. Sherwood**, 982 A.2d 483 (Pa. 2009), the Pennsylvania Supreme Court set forth the general principles regarding the admissibility of prior bad acts at trial as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Id.* at 497, *citing* **Commonwealth v. Powell**, 956 A.2d 406, 419 (Pa. 2008). "The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." **Commonwealth v. Ross**, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*) (citations omitted).

In **Ross**, an *en banc* panel of this Court acknowledged the possibility that Rule 404(b)(2)'s exceptions could swallow the general rule, and offered the following caution:

> The purpose of Rule 404(b)(1) is to prohibit the admission of prior bad acts to prove "the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad act conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish

- 11 -

an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question. . . . [T]his Court has warned the prior bad acts may not be admitted for the purposes of inviting the jury to conclude that a defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged. ***See, e.g., Commonwealth v. Kjersgaard***, 276 Pa. Super. 368, 419 A.2d 502, 505 (Pa. Super. 1980).

***Ross***, 57 A.3d at 105-06. Mindful of this warning, we conclude that there exists in this case "a close factual nexus sufficient to demonstrate the connective relevance" of Sitler's prior conviction for vehicular manslaughter to the principal charge at issue in the present case.

Sitler is charged with, *inter alia*, homicide by vehicle. A person is guilty of that crime if he "recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle . . ., when the violation is the cause of death." 75 Pa.C.S. § 3732(a). Recklessness, an essential element of homicide by vehicle, is defined as follows:

A person acts recklessly with respect to a material element of an offense when he **consciously** disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances **known** to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3) (emphasis added). Thus, the *mens rea* of recklessness implicates knowledge in two ways: (1) the actor must

- 12 -

consciously (*i.e.*, with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor. By any reasonable measure, Sitler's knowledge that his conduct created a risk that he subsequently disregarded is central to the Commonwealth's case against him. Facially, therefore, Sitler's prior conviction for vehicular manslaughter would be admissible pursuant to the knowledge exception codified in Pa.R.E. 404(b)(2). However, per **Ross**, we must ascertain whether a close factual nexus exists between the two events before determining admissibility with finality.

The Commonwealth alleges that Sitler, driving his pick-up truck, followed perilously close to the rear bumper of Ms. Qawasmy's van. When Ms. Qawasmy activated her turn signal and initiated a right hand turn, Sitler purportedly revved his engine, sped past Ms. Qawasmy's van, and struck a pedestrian, all while driving at least 15 miles per hour over the speed limit. The facts of Sitler's Alabama conviction bear a sufficient resemblance to those in the case *sub judice*. In 2006, Sitler pleaded guilty to vehicular manslaughter, a crime which also requires a demonstration of recklessness. In that case, Sitler was driving closely behind another vehicle early in the morning through a dense fog. When the driver in front of Sitler applied his brakes, Sitler swerved around that driver and hit an oncoming vehicle, killing a person inside. Sitler pleaded guilty to the crime, including the factual and

legal averment that his actions were reckless and that said recklessness resulted in the death of another person.

Although the facts of the cases differ in trivial ways, the commonalities between the two are amply sufficient to create the necessary nexus rendering the Alabama conviction admissible in the instant case. In both cases, Sitler was operating a motor vehicle too closely to another vehicle while travelling at an excessive speed; that combination of factors led to the death of another person. Because of these similarities, the Alabama conviction is admissible to demonstrate that Sitler knew that his hazardous driving created a substantial risk that the death of another may result therefrom. The conviction is also relevant to prove not only that Sitler knew of the risk, but also that he consciously disregarded it.

Finally, even though facially admissible, the probative value of prior bad acts evidence must still outweigh its "potential for unfair prejudice." Pa.R.E. 404(b)(2). There is inherent prejudice any time a prior bad act such as a criminal conviction is introduced against a criminal defendant. That is why we have been, and should be, very cautious in our evaluation of these claims, and also why we issued the warning in **Ross,** discussed above. However, recklessness is a component central to a homicide by vehicle prosecution, and knowledge is essential to that proof. As such, the prior conviction in this case has significant probative value. The probative value would outweigh any potential prejudice that might inhere from the

introduction of the prior crime, particularly if the crime is introduced to the jury along with a cautionary instruction by the trial court. **See Russell**, 938 A.2d at 1092 (holding that admission of prior juvenile adjudication to prove arsonist's knowledge of accelerants was not unfairly prejudicial because, *inter alia*, the evidence was accompanied by a curative instruction).

For all practical purposes, the trial court's conclusion that the evidence was inadmissible rested exclusively upon its premise that everyone who drives knows that driving recklessly creates risk to other drivers and pedestrians. **See** Trial Court Opinion, 4/30/2014, at 11. However, the inquiry is not so simple. As set forth above, proof of knowledge plays a vital role in the Commonwealth's burden of proof for a homicide by vehicle prosecution. The trial court ignored this role *in toto*, apparently believing that, because every driver knows that driving recklessly creates risk, no other evidence of knowledge has any probative value. We simply cannot ignore the probative value that Sitler's prior conviction has in a case such as this one.

Therefore, we conclude the trial court abused its discretion in granting Sitler's motion *in limine* regarding his 2006 Alabama manslaughter conviction. For the preceding reasons, Sitler's prior conviction is admissible pursuant to Pa.R.E. 404(b)(2).

The Commonwealth next argues that the trial court erred by precluding any evidence of Sitler's consumption of three alcoholic beverages

before driving the pick-up truck. The trial court reasoned that the evidence was inadmissible because the Commonwealth was not going to produce an expert to testify that three beers would have caused Sitler to be intoxicated, that consumption of alcohol without more is not evidence of recklessness, and that the evidence would simply be too prejudicial to Sitler's right to a fair trial. **See** Trial Court Opinion, 4/30/2014, at 3-8. Based on our review, we disagree with the Commonwealth's position that this evidence is admissible, and that the trial court abused its discretion in precluding it from trial. **See Russell, supra** (stating that our standard of review of evidentiary rulings is an abuse of discretion).

For purposes of proving that a driver was reckless, Pennsylvania Courts distinguish between evidence that a driver was intoxicated and evidence that the driver only had been drinking, but was not intoxicated. Although evidence of intoxication does not establish recklessness *per se*, such evidence nonetheless is relevant and admissible. **See Commonwealth v. Jeter**, 937 A.2d 466, 468 (Pa. Super. 2007). Combined with other evidence, evidence of intoxication can be used as a factor to prove recklessness. **Id.** However, where the Commonwealth cannot demonstrate that the driver actually was intoxicated, evidence that the driver had been drinking (such as the odor of alcohol emanating from the driver) is inadmissible to prove that a person was driving recklessly. **See Commonwealth v. Buffington**, 444 A.2d 1194, 1198 n.8 (Pa. Super.

1982) ("Without question, the mere fact of consuming intoxicating liquor is inadmissible to prove unfitness to drive."). Nevertheless, the inadmissibility of such evidence can be overcome "if in addition to drinking, facts are shown from which a conclusion reasonably follows that the driver was under the influence." *Commonwealth v. Cave*, 281 A.2d 733, 734 (Pa. Super. 1971). If the Commonwealth can adduce additional facts to prove intoxication, "all the evidence . . . [is] admissible . . . to determine whether or not the drinking was wholly or partly the cause of an accident." *Id.*

In *Cave*, which the Commonwealth relies upon exclusively, Cave consumed three beers and then immediately drove with excessive speed and in a reckless manner. Within one mile of leaving the pub where he was drinking, Cave failed to negotiate a curve, crossed the center line, and hit an oncoming car head-on, killing a passenger. *Id.* at 734. Cave argued that admission of evidence of his consumption of only three beers was erroneous, and in violation of the long-standing principle that "the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably established a degree of intoxication which proves unfitness to drive: *Critzer v. Donovan*, 289 Pa. 381, 384, 385, 137 A. 665, 666 [(1927).]" *Id.* (quotations and citation omitted). In *Cave*, we clarified and expanded this rule, as follows:

> It is true that the "mere" drinking of intoxicating liquor is inadmissible to prove that a driver was under the influence of intoxicating liquor and unfit to drive an automobile. However, it is also true that if in addition to the drinking, facts are shown

- 17 -

from which a conclusion reasonably follows that the driver was under the influence of intoxicating liquor, all the evidence, the drinking and the surrounding circumstances are admissible for the consideration of the trier of facts to determine whether or not the drinking was [w]holly or partly the cause of an accident for which he is being held responsible.

*Id.*

We then examined **Critzer**, in which our Supreme Court established the still-precedential rules governing the admission of evidence relating to the consumption of alcohol at a trial for a vehicular offense involving recklessness. In **Critzer**,

the court reasoned as follows: "It may be conceded that in an action wherein reckless or careless driving is the matter at issue, proof of intoxication would be relevant. When evidence of intoxication appears in a case such as this it is offered . . . to show a circumstance from which recklessness or carelessness of the driver may be inferred. Care should then be taken as to the use of such evidence. There was no allegation or proof of intoxication, nor was there any evidence of conduct or appearance from which a reasonable inference could be drawn that the man was intoxicated. . . . Standing alone, the odor of liquor does not prove, nor is it evidence of, intoxication; joined with other facts it may become so. . . ."

". . . Proof of the odor of liquor is admissible for certain purposes, but its natural consequence is not reckless driving."

**Cave**, at 736, *citing* **Critzer, supra** (citations omitted) (emphasis removed).

Ultimately, in **Cave**, we held that the **Critzer** rule was inapplicable, because there was "an abundance of evidence" to prove that Cave was operating the vehicle "under the influence of intoxicating liquor." **Cave**, 281 A.2d at 736-37. In other words, we held that there were other facts that could be "joined" with the odor of alcohol to demonstrate that Cave was

- 18 -

intoxicated, and that the intoxication contributed to the accident. Notably, Cave's extremely dangerous driving occurred immediately after he left the bar after drinking the alcohol.

The same cannot be said in the instant case. Based upon the still-binding rules set forth in *Cave* and *Critzer*, evidence of intoxication would be relevant and admissible to demonstrate that a driver was driving recklessly. However, evidence short of intoxication, such as an odor of alcohol emanating from a person, without more, is not admissible to prove recklessness when driving unless that evidence can be joined with other relevant facts to establish intoxication. In the case *sub judice*, the evidence that we can glean from the certified record demonstrates that Sitler had consumed three beers approximately three hours before driving the vehicle. Although each of the police officers at the scene described an odor of alcohol emanating from Sitler, none of those officers alleged that Sitler appeared to be intoxicated, unsteady, or otherwise influenced by the three beers. Unlike *Cave*, Sitler did not drink three beers, jump into his truck, and immediately drive in a hazardous manner that caused an accident killing a person within one mile. In other words, no evidence exists other than the odor of alcohol to suggest that Sitler was intoxicated.

In Pennsylvania, the focus on the admissibility of alcohol evidence is intoxication. The odor of alcohol alone is insufficient to establish intoxication. The record provides no evidence of intoxication, and the Commonwealth has

admitted that it will not be calling an expert at trial to establish that Sitler's consumption of three beers rendered him intoxicated, or that those beers contributed to the accident. Therefore, the Commonwealth cannot establish any additional facts that would render the evidence admissible.

Under such circumstances, we also note that the prejudice that would result from the admission of this evidence would be insurmountable for Sitler. We agree with the trial court that the evidence would "improperly suggest that [Sitler] was intoxicated, and that such intoxication caused the accident[.]" Trial Court Opinion, 4/30/2014, at 7. Moreover, we agree with the trial court that "the entry of the evidence would also improperly shift the burden of proof to [Sitler]. That is, . . . [Sitler] would be forced to rebut the innuendo that three (3) beers, three (3) hours earlier caused him to drive recklessly at the time of the accident." *Id.* Without more, the evidence is too prejudicial to be admitted at trial. Therefore, the trial court did not abuse its discretion in granting Sitler's motion *in limine* in this regard.

In its final claim, the Commonwealth takes issue with the trial court's ruling that Sitler could plead guilty to the *crimen falsi* offenses charged against him without any of the evidence related to those crimes being admitted at his trial for homicide by vehicle. The Commonwealth contended before the trial court (and now before this Court) that evidence that Sitler lied to the police about who was driving the vehicle and that he instructed Ms. Dinnocenti and her minor children to lie to the police was admissible to

demonstrate Sitler's consciousness of guilt with respect to the homicide by vehicle offense. In its Rule 1925(a) opinion, the trial court reasoned that the Commonwealth's complaint is premature because Sitler has not yet pleaded guilty, and that he might never do so. We agree that this issue is not yet ripe for review.

The Commonwealth's claim is predicated upon what evidence it **may** present at trial if Sitler first pleads guilty to the *crimen falsi* offenses. In other words, Sitler must plead guilty before the Commonwealth's argument ripens. Sitler has not yet pleaded guilty, and it is possible that he might never do so. "[T]he courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future." ***Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia***, 937 A.2d 385, 392 (Pa. 2007). Therefore, because both the trial court and this Court are precluded from issuing purely advisory opinions,[8] ***see Commonwealth v. Neitzel***,

---

[8] The advisory nature of trial court's ruling is particularly highlighted by the fact the trial court denied the motion to sever and, therefore, Sitler's potential partial guilty plea related to charges that were contained in the same criminal information on which he would be proceeding to trial.

678 A.2d 369, 375 (Pa. Super. 1996), we vacate that portion of the trial court's order.[9]

In sum, we reverse the portion of the trial court's order precluding evidence of Sitler's prior vehicular manslaughter conviction. We affirm the portion of the order precluding evidence of Sitler's consumption of alcohol. We vacate the portion of the order precluding evidence of Sitler's *crimen falsi* offenses if he pleads guilty to those charges, as the trial court addressed the issue prematurely.

Order affirmed in part, reversed in part, vacated in part. Case remanded for trial. Jurisdiction relinquished.

P.J.E. Ford Elliott, P.J.E. Bender, Judge Shogan and Judge Olson join this Opinion.

Judge Lazarus files a Concurring and Dissenting Opinion, to which Judge Bowes, Judge Mundy and Judge Stabile join.

This decision was reached prior to July 25, 2016, with Judge Mundy's participation.

---

[9] The Commonwealth is in no way precluded from raising this issue or pursuing review if and when Sitler pleads guilty, and will suffer no meaningful hardship by our decision.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/26/2016</u>